EXHIBIT A

QRY   DATE: 02/08/19   AN: 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   DOC: 150 UNIT: MA       PG: 003+ DEQR
          OASDI EMPLOYER TOTAL        4860.00
       96 OASDI YEARLY TOTAL          4860.00

EIN: 112836080              STEINWAY AUTO PARTS INC
                           180 FRONT ST
                           HEMPSTEAD              NY  11550-3816
RPYR  REO LOAC  NAME        EARNINGS     TOTAL COMP  CONTROL NUMBER  PR    S
0097  AA       D  PFLANZ      1261.75     1261.75 7061-85-31802  00398 V
                 WAGE TOTAL   1261.75
          OASDI EMPLOYER TOTAL  1261.75
EIN: 113220577              MORICHES SERVICE CO INC
                           11 PENN PLZ
                           NEW YORK              NY  10001-2006
0097  AA       D J PFLANZ     4101.88     4101.88 7155-86-11944  01698 V
                 WAGE TOTAL   4101.88
          OASDI EMPLOYER TOTAL  4101.88
EIN: 742226747              ROYCE INVESTMENT GROUP INC
                           199 CROSSWAYS PARK DR
                           WOODBURY              NY  11797-2016
0097  AA       D  PFLANZ       500.00      500.00 7086-86-~~~~~  00798 V
                 WAGE TOTAL     500.00
          OASDI EMPLOYER TOTAL   500.00
       97 OASDI YEARLY TOTAL    5863.63

   98 NONE

   99 NONE

SELF EMPLOYMENT
RPYR  REO SMEM  NAME        EARNINGS     SE NUMBER   CONTROL NUMBER  PR
SE00  OI       D J PFLANZ     4498.00    110000000   2211-72-17303  02503
OASDI SELF EMPLOYMENT TOTAL   4498.00
       00 OASDI YEARLY TOTAL  4498.00

EIN: 112584636              RICKYS COFFEE SHOP INC
                           325 MERRICK AVE
                           EAST MEADOW           NY  11554-1556
RPYR  REO LOAC  NAME        EARNINGS     TOTAL COMP  CONTROL NUMBER  PR
0001  AA       D  PFLANZ       648.00      738.00 1212-69-04465  02902
       AT      D  PFLANZ        90.00
                 TIPS TOTAL     90.00       .00 1212-69-04465  02902
          OASDI EMPLOYER TOTAL   738.00
SELF EMPLOYMENT
RPYR  REO SMEM  NAME        EARNINGS     SE NUMBER   CONTROL NUMBER  PR
SE01  OI       D J PFLANZ     5385.00    110100000   2211-72-17302  02603
OASDI SELF EMPLOYMENT TOTAL   5385.00
       01 OASDI YEARLY TOTAL  6123.00

SELF EMPLOYMENT
RPYR  REO SMEM  NAME        EARNINGS     SE NUMBER   CONTROL NUMBER  PR
SE02  OI       D J PFLANZ     6631.00    110200000   2211-72-17304  02603
OASDI SELF EMPLOYMENT TOTAL   6631.00
       02 OASDI YEARLY TOTAL  6631.00

EIN: 113191862              IVAN P ABRAHAMSON & HAL P
                           ABRAHAMSON PTR

Social Security Administration
138-50 Barclay Avenue
Flushing, New York 11355-2554
www.socialsecurity.gov

Feb. 08 2019 03:49PM P2        PHONE NO. : 718 591 0507        FROM : VILLAGE STAT'Y INC)

```
QRY   DATE: 02/08/19   AN: 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   DOC: 150 UNIT: MA        PG: 004+ DEQR
                               ADVANCED FOOT CARE ASSOC
                               9707 63RD RD
                               REGO PARK                 NY  11374-1607
RPYR   REO LOAC   NAME         EARNINGS        TOTAL COMP   CONTROL NUMBER    PR     S
0003     AA        D    PFLANZ       7167.50        7167.50 3068-85-48425    00804  V
                   WAGE TOTAL        7167.50
        OASDI EMPLOYER TOTAL         7167.50
        03 OASDI YEARLY TOTAL        7167.50
EIN: 113191882
RPYR   REO LOAC   IVAN P ABRAHAMSON & HAL F
                   NAME          EARNINGS        TOTAL COMP   CONTROL NUMBER    PR     S
0004     AA        D    PFLANZ      10533.00       10533.00 4083-85-48676    01005  V
                   WAGE TOTAL       10533.00
        OASDI EMPLOYER TOTAL        10533.00
        04 OASDI YEARLY TOTAL       10533.00
EIN: 113191882
RPYR   REO LOAC   IVAN P ABRAHAMSON & HAL F
                   NAME          EARNINGS        TOTAL COMP   CONTROL NUMBER    PR     S
0005     AA        D    PFLANZ       9751.75        9751.75 5061-87-70065    00706  V
                   WAGE TOTAL        9751.75
        OASDI EMPLOYER TOTAL        9751.75
        05 OASDI YEARLY TOTAL        9751.75
EIN: 136400434
                               CITY OF NEW YORK
                               % OFFICE OF PAYROLL ADMINISTRATION
                               450 W 33RD ST FL 4
                               NEW YORK                 NY  10001-2633
RPYR   REO LOAC   NAME          EARNINGS        TOTAL COMP   CONTROL NUMBER    PR     S
0006     AA        D J PFLANZ         207.02         207.02 6088-88-96076    01107  V
                   WAGE TOTAL          207.02
        OASDI EMPLOYER TOTAL          207.02
        06 OASDI YEARLY TOTAL         207.02
07 NONE
08 NONE
09 NONE
10 NONE
11 NONE
12 NONE
13 NONE
14 NONE
15 NONE
16 NONE
17 NONE
18 NONE
```

*[handwritten notes:]* EiN.

Emploxe FDeq Number 1131918882

EXHIBIT B

## AFFIDAVIT

STATE OF NEW YORK      )
COUNTY OF QUEENS       ) ss.:

George Haberstumpf makes the following affirmation under the penalties of perjury. Upon information and belief:

1. I reside at 43-60 Douglaston Pkwy Apt 604, Little Neck, NY 11363.

2. I am a friend of the family and I was a patient of Dr. Ivan Abrahamson's for about five years before his passing and once a patient of Dr. Hal Abrahamson's about 20 years ago.

3. I have known Daniel Pflanzer since the first grade.

4. I knew Daniel's mother and father before their passing and Daniel's sister before her passing. I know Dr. Ivan's widow, Jean Abrahamson, I know Dr. Hal Abrahamson, and I even knew Dr. Ivan Abrahamson's father who starred the podiatry practice.

5. My mother was also a patient of Dr. Ivan Abrahamson's and I would often accompany my mother on her visits.

6. Consequently, I was exposed to the family podiatry office from both a personal and patient perspective many, many times over the decades.

7. I can say with certainty that Daniel worked at the Rego Park office and the Flushing office going back for a long time, until recently. Before Daniel worked there, his sister worked there until she passed away, and his mother until her passing before that. It was a true family business and all the Pflanzers, Ivan's sister and niece and nephew (Daniel), worked for Ivan Abrahamson, as did Ivan's wife, Jean, and son Dr. Hal Abrahamson.

8. I personally witnessed Daniel working there many times over the years. Often when I would go there, he would be performing duties such receptionist work, greeting patients, setting up for patients, and even cleaning the office.

1 of 2

George Haberstumpf

Affirmed to before me this _16th_ day of July 2018

Notary Public

STANLEY YEE
Notary Public - State of New York
NO. 01YE6310960
Qualified in Queens County
My Commission Expires Feb 9, 2019

## AFFIDAVIT

STATE OF NEW YORK )
COUNTY OF QUEENS ) ss.:

John Palyo makes the following affirmation under the penalties of perjury. Upon information and belief:

1. I reside at 138-47 64th Ave, Flushing, NY 11367.

2. Until his passing, I had been a patient of Dr. Ivan Abrahamson's for over 31 years.

3. I know Daniel Pflanzer.

4. I know that Daniel worked for Dr. Ivan Abrahamson for at least a few years, as I would see him in the Flushing office at 76-79 172 St, Fresh Meadows, New York, 11366, working as a receptionist and doing odd and end jobs.

5. For instance, Daniel used to make special pads in the office for my wife because she had a heel spur.

6. I am elderly and, frankly, I simply don't remember the dates of when I knew Daniel to work for Dr. Ivan Abrahamson.

_John Palyo_

John Palyo

Affirmed to before me this ___24th___ day of July 2018

_Notary Public_

Notary Public

JANELLE THOMAS
NOTARY PUBLIC-STATE OF NEW YORK
No. 01TH6356596
Qualified in Queens County
My Commission Expires 04-03-2021

1 of 1

EXHIBIT C

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------x

Daniel J. Pflanzer,

                              Plaintiffs,          Civil Action, File No: 1:18-cv-2676

            -against-

John Doe PC d/b/a Aadvanced Foot Care
Associates, Hal F. Abrahamson, and
Hal F. Abrahamson as the Executor of the
Estate of Ivan Abrahamson,

                              Defendants.

------------------------------------------------------------x

## DEFENDANTS' OBJECTIONS AND RESPONSES TO PLAINTIFF'S SECOND SET OF INTERROGATORIES AND DEMAND FOR PRODUCTION OF DOCUMENTS

Defendants, John Doe PC d/b/a Aadvanced Foot Care Associates, Hal F. Abrahamson, Debra B. Manheim, and Hal F. Abrahamson as the Executor of the Estate of Ivan Abrahamson ("Defendants"), by and through their undersigned counsel, hereby respond to Plaintiffs' First Set of Interrogatories and Requests for Production of Documents Directed to Answer Defendants as follows:

### PRELIMINARY STATEMENT

1. Defendants have not yet completed their investigation of the facts relating to this action and have not yet completed their preparation for trial. The following responses to the Discovery Requests are given without prejudice to Defendants' right to produce or present, at the time of trial, subsequently discovered evidence.

2. Except for explicit facts admitted herein, no admissions of any nature whatsoever are implied or should be inferred from Defendants' response to the Discovery

Requests. The fact that an individual Discovery Request has been responded to should not be taken as an admission or acceptance of the existence of any facts set forth or assumed by such interrogatory, or that such response constitutes admissible evidence.

3. Each of the responses or objections is based on Defendants' understanding of the Discovery Requests. To the extent that Plaintiff asserts an interpretation of any Discovery Request that is inconsistent with Defendants' understanding, Defendants reserve the right to supplement its objections and responses.

4. In responding to the document requests, Defendants will endeavor to produce those responsive documents presently known by or available to them after a diligent search and reasonable inquiry and that are not privileged or otherwise protected from disclosure. However, discovery with respect to this action has not yet been completed as of the date of these responses, and ongoing discovery and investigation may uncover documents not presently known but upon which Defendants may necessarily rely in this action. As discovery is ongoing and continuing with respect to each of the categories of documents sought by the requests, Defendants reserve the right to supplement these responses to the requests at any time up to and including the trial of this action.

5. These responses are made solely for the purpose of this action. The responses do not waive any appropriate objection, including but not limited to those based on competency, relevancy, materiality, attorney-client privilege, work-product or admissibility, which would require the exclusion of any statement made herein if the statement were offered into evidence in Court. All objections to the Discovery are reserved and may be interposed at the time of trial or other proceeding.

6. Without obligating itself to do so, except to the extent required by the Federal Rules of Civil Procedure, Defendants reserve the right to change or supplement these responses as additional facts or documents are discovered. Defendants reserve the right to utilize subsequently discovered facts or documents at trial.

## GENERAL OBJECTIONS

A. Defendants object to the Discovery Requests and the instructions therein to the extent they seek to impose obligations beyond those contained within the Federal Rules of Civil Procedure.

B. Defendants object to the Discovery Requests to the extent they seek information not within the possession, custody, or control of Defendants.

C. Defendants object to the Discovery Requests to the extent they seek information protected by the attorney work-product doctrine, attorney-client privilege, and any other applicable rule of privilege, confidentiality or immunity provided by law. A privilege log will be provided which identifies documents withheld pursuant to these privileges.

D. Defendants object to the Discovery Requests to the extent they seek information that is equally available to the parties, is in the public domain, or can be found in Defendants' previous or contemporaneous disclosures, or Plaintiffs' disclosures, and the burden of deriving or ascertaining the answer or response is substantially the same for Plaintiffs as it is for Defendants. See Fed. R. Civ. P. 33(d).

E. Defendants object to the Discovery Requests to the extent they are vague, ambiguous, misleading and/or unintelligible.

F. Defendants object to the Discovery Requests to the extent they are overly broad, unduly burdensome, oppressive, and/or vexatious.

G.     Defendants object to the Discovery Requests to the extent they seek information that is not relevant to the subject matter of this action or is disproportional to the needs of the case.

H.     Defendants object to the Discovery Requests to the extent they call for legal conclusions.

I.     Defendants object to Plaintiff's definitions and use of the terms "referred to," "reflect," "relate to" in the Discovery Requests, as such requests are overbroad and unduly burdensome. *Aikens v. Deluxe Financial Services, Inc.*, 217 F.R.D. 533, 535 (D. Kan. 2003) (finding that discovery requests using words like "regarding" or "relating to" with respect to a category or group of documents is facially overbroad).

J.     Defendant objects to Plaintiffs' reference to "Defendants" or agents of Defendants in the Discovery Requests to the extent they include any non-party and any individual who was not a manager or supervisor of Defendants during the dates at issue. To the extent the terms are more broadly defined, they are overbroad, unduly burdensome, seek discovery that is immaterial and irrelevant, and seek discovery that is not reasonably calculated to lead to the discovery of admissible evidence.

## INTERROGATORIES

1.     State whether the Defendants or Aadvanced Foot Care Associates ever paid any social security taxes or any other governmental state or federal tax taxes in connection with any employment of the Plaintiff at any time, or submitted any information at any time regarding Plaintiff's employment with Defendants to the Social Security Administration and if so the specific years and months to which the Defendants paid such taxes or made such reports from any employment or Plaintiff at the Rego Park and/or the Flushing offices.

**ANSWER:** There is no record in Defendants records indicating any paid social security taxes or other governmental state or federal tax taxes in connection with employment of the

Plaintiff, or submitted information regarding Plaintiff, as the Plaintiff was not an employee of Aadvanced Footcare Associates.

2.      State the precise number of hours each week, the number of weeks and the dates of such occurrences that Plaintiff pulled and filed charts, sterilized instruments for the Defendants or Jean Abrahamson at the Flushing office as stated by Jean Abrahamson in her affidavit dated August 15, 2018, and whether Plaintiff was paid for such work, how much Plaintiff was paid, what training or certification was provided to Plaintiff for such tasks and how long it would take Plaintiff to complete each of those tasks.

ANSWER:  None as Plaintiff was not an employee of Defendants and performed no tasks, received no training or earned any certifications as an employee of Defendants.

3.      Identify all staff, podiatrists and or any individual who worked at any time or for any duration for the Flushing office from 2012-2018 and their duties and whether such employees or staff were W-2 employees.

ANSWER:

Ivan P. Abrahamson, DPM- Owner / Podiatrist

Hal F. Abrahamson, DPM Owner / Podiatrist

Jean Abrahamson- PMAC- (Podiatric Medical Assistant, Certified)

- W2 Employee - Answered Phones, made appointments, cleaned office assisted in chair side procedures when warranted, prepared rooms and equipment, received payments, prepared certain booking tasks which were transmitted to the Rego Park main office.

4.      State all the dates and the duration that Plaintiff ever worked for the Defendants Aadvanced Foot Care Associates at the Rego Park Office or the Flushing Office and if so, employed the date or dates on which Plaintiff employment was terminated.

**ANSWER:** From the period 2012 to present, Plaintiff has never worked for Defendants at any office.

5.     Identify any employees or owners of defendant Aadvanced Foot Care Associates who regularly performed duties such as sterilize instruments, pull patient charts, interact with patients or open the office for patients from 2006-2017.

**ANSWER:** See response to interrogatory 3 above.

6.     State the total amount of compensation paid to Plaintiff by Defendants from employment with defendant Aadvanced Foot Care Associates from 2012 to and 2018 and for any other periods by which Plaintiff was ever employed with defendant Aadvanced Foot Care Associates.

**ANSWER:** Plaintiff never worked for Defendants from 2012 to 2018 and thus earned no compensation.

7.     State the total number of hours and dates that Plaintiff "ran" errands or favors for the Defendants or for Jean Abrahamson as stated in Defendants answers to Plaintiff's first set of interrogatories, state what activities the errands consisted of state whether Plaintiff was paid for such work and if so, how much the Plaintiff was paid.

**ANSWER:** There were no set hours for doing occasional favors Jean and Ivan Abrahamson. Doing favors do not constitute employment. These favors were requested by his Aunt and Uncle.

8.     State the dates that Lori Karp was employed by Defendants at both the Rego Park Office or the Flushing Office and whether there was any other employee who handled payroll or employee records from 2006-2017.

2017 whether Plaintiff had any permitted access to information regarding regular treatment protocols for patients used by the offices, any permitted access to machinery in the offices.

**ANSWER:**  Plaintiff never had or was given access to the Electronic Health Records program of Aadvanced Footcare Associates. Plaintiff lived in the premises of the Flushing office and passed through the office to access the front door of the home/ premises. Therefore, he had access to the rooms containing equipment and any old remaining paper charts that were stored in the file cabinet at that location.

## DEFENDANTS' RESPONSE TO PLAINTIFF'S DEMAND FOR PRODUCTION OF DOCUMENTS AND ELECTRONIC INFORMATION

1.    Provide all employee records pertaining to plaintiff in regards to any employment with Aadvanced Foot Care Associates including employment at the Rego Park Office including but not limited to W-2, personal files, paystubs, reports made to the Social Security Administration and also provide any records of payment or employment on behalf of plaintiff at the Flushing office from 2012-2018.

ANSWER: None.  Defendants have previously stated that no employment records for Plaintiff exist from 2012 -2021.

2.    Provide any documentation related to defendant Aadvanced Care Foot Associates payment of social security taxes in relation to employment of plaintiff from 2002-2005 as shown from the social security employment statement that was provided to defendants in plaintiff's opposition to defendants motion to dismiss that shows such taxes being paid by defendants for

EXHIBIT D

ORIGINAL

1

1

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF NEW YORK

CIVIL DIVISION - CENTRAL ISLIP

------------------------------------------x

DANIEL J. PFLANZER,

Civil Action, File No.

2:18-cv-2676

Plaintiff,

-against-

JOHN DOE PC d/b/a ADVANCED FOOTCARE ASSOCIATES,
HAL F. ABRAHAMSON, DEBRA B. MANHEIM, and
HAL F. ABRAHAMSON AS THE EXECUTOR OF THE ESTATE
OF IVAN ABRAHAMSON,

Defendants.

------------------------------------------x

Via Zoom
New York

October 14, 2021
Time Started 11:00 am

EXAMINATION BEFORE TRIAL of

HAL ABRAHAMSON, Defendant, held at the

above-mentioned time and place, before

Pamela Ross, a Stenographer and Notary

Public within and for the State of New York.

ALL STAR REPORTERS

2

1            HAL ABRAHAMSON

2        A P P E A R A N C E S:

3

4                    .

5        STEPHEN C. DACHTERA, ESQ.

6        10105 Lefferts Blvd., Suite 207

7        S. Richmond Hills, New York   11419

8        Attorney for Plaintiff

9

10

11       LAW OFFICE OF DANIEL R. OLIVIERI, PC

12       100 Jericho Quadrangle Suite 233

13       Jericho, New York   11753

14       Attorney for Defendants

15

16

17

18

19

20

21

22

23

24

25

ALL STAR REPORTERS

HAL ABRAHAMSON

221. UNIFORM RULES FOR THE

CONDUCT OF DEPOSITIONS.

221.1: Objections at Depositions (a)

Objections in general. No objections shall be

made at a deposition except those which, pursuant to

subdivision

(b), (c) or (d) of Rule 3115 of the Civil

Practice Law and Rules, would be waived if not

interposed, and except in compliance with subdivision

(e) of such rule. All objections made at a deposition

shall be noted by the officer before whom the

deposition is taken, and the answer shall be given and

the deposition shall proceed subject to the objections

and to the right of a person to apply for appropriate

relief pursuant to Article 31 of the CPLR.

(b) Speaking objections restricted.

Every objection raised during a deposition shall

be stated succinctly and framed so as not to suggest

an answer to the deponent and, at the request of the

questioning attorney, shall include a clear statement

as to any defect in form or other basis of error or

irregularity.  Except to the extent permitted by CPLR

Rule 3115 or by this rule, during the course of the

examination, persons in attendance shall not make

HAL ABRAHAMSON

statements or comments that interfere with the
questioning.

221.2 Refusal to answer when objection is made. A
Deponent shall answer all questions at a deposition,
except (i)to reserve a privilege or right of
confidentiality, (ii) to enforce a limitation set
forth in an order of the court, or (iii) when the
question is plainly improper and would, if answered,
cause significant prejudice to any person.  An
attorney shall not direct a deponent not to answer
except as provided in CPLR Rule 3115 or this
subdivision.  Any refusal to answer or direction not
to answer shall be accompanied by a succinct and clear
statement of the basis therefor.  If the deponent does
not answer a question, the examining party shall have
the right to complete the remainder of the deposition.

221.3  Communication with the deponent.

An Attorney shall not interrupt the deposition
for the purpose of communicating with the deponent
unless all parties consent or the communication is
made for the purpose of determining whether the
question should not be answered on the grounds set
forth in section 221.2 of these rules and in such
event, the reason for the communication shall be

ALL STAR REPORTERS

HAL ABRAHAMSON

stated for the record succinctly and clearly.

IT IS FURTHER STIPULATED AND AGREED that the

transcript may be signed before a Notary Public with

the same force and effect as if signed before a clerk

or a Judge of the court.

IT IS FURTHER STIPULATED AND AGREED that the

examination before trial may be utilized for all

purposes as provided by the CPLR.

IT IS FURTHER STIPULATED AND AGREED by and

between the attorneys for the respective parties

hereto that a copy of this examination shall be

furnished, without charge, to the attorneys

representing the witness testifying herein.

********

ALL STAR REPORTERS

6

HAL ABRAHAMSON

1

2          THE COURT REPORTER:  The attorneys

3     participating in the deposition acknowledge that I am

4     not physically present in the deposition room and that

5     I will be reporting this deposition remotely.

6               You further acknowledge that, in lieu of an

7     oath administered in person, the witness will verbally

8     declare his testimony in this matter is under penalty

9     of perjury.

10              The parties and their counsel consent to

11    this arrangement and waive any objections to this

12    manner of reporting.

13              Please indicate your agreement by stating

14    your name and your agreement on the record.

15         MR. DACHTERA:  Stephen Dachtera, I agree,

16    attorney for plaintiff.

17         MR. OLIVIERI:   Daniel Olivieri for the

18    defendants and Hal Abrahamson.

19    H A L   A B R A H A M S O N ,

20      having been first duly sworn, was examined and testified as

21      follows:

22              THE COURT REPORTER: Please state and spell your

23      name for the record.

24         THE WITNESS:  Hal Abrahamson, H A L

25         A B R A H A M S O N .

ALL STAR REPORTERS

19

HAL ABRAHAMSON

1

2   what you mean by him helping him is that he put him on the

3   payroll?

4       A   Based on that document it looks like he put him on

5   the payroll.

6       Q   And your father and you were partners in this

7   business, right?

8       A   Yes.

9       Q   So he had authority to do this, correct?

10      A   Yes.

11      Q   So he never told you?

12      A   No.

13      Q   And it's the first time you're finding out?

14      A   The first time I'm finding out, yes.

15      Q   And you still are stating that Mr. Pflanzer never

16  worked for your company?

17      A   As far as I'm concerned, yes.

18      Q   As far as you're concerned.

19          But your father hired Mr. Pflanzer, so as far as he

20  was concerned he worked for you?

21          MR. OLIVIERI:   Note my objection to the form of

22          the question.

23          Go ahead if you can.

24      A   Can you repeat the question.

25      Q   Sure. According to you, Mr. Pflanzer never worked for

21

HAL ABRAHAMSON

A     Finish the question.

Q     When your accountant does the taxes for the business
and for your employees they report their income to Social
Security.  Correct?

A     Correct.

Q     Okay. And you take out Social Security taxes and
medical care out of your employees' paychecks, correct?

A     Correct.

Q     And that's how Social Security has a record of what
they earn, correct?

A     Correct.

Q     Okay. So, based on this document it would be fair to
say that your father paid Mr. Pflanzer on the books and took
out taxes for him?

        MR. OLIVIERI:   Note my objection to the form of

        the question.

        Go ahead if you can.

A     It would be apparent to me, yes, for the purpose of
Mr. Pflanzer being able to collect Social Security when he's
older.  That was how my father worked, he tried to be nice to
him.

Q     Okay. Do you know how many hours he worked?

A     No.

Q     No. Do you know what he did?

ALL STAR REPORTERS

22

HAL ABRAHAMSON

A   No.

Q   How often did you speak to your father in running this business in 2003?

A   I can't recall.

Q   Did -- you said you went back and forth when needed. Did you talk to him at the end of every day?

A   Sometimes.

Q   Sometimes. And Mr. Pflanzer never came up?

A   No.

Q   So, from 2003 to 2005 you spoke to him maybe once a day for three years, Mr. Pflanzer never came up?

     MR. OLIVIERI:  Note my objection to the form.

     Go ahead.

A   I can't recall that far back.

Q   You can't recall.

When you visited the office in Flushing you never saw Mr. Pflanzer there?

A   Not in the office.

Q   Where did you see him?

A   Sometimes in the street, but not in the office.

Q   Did you ever see him in Rego Park?

A   On occasion.

Q   And when you say on occasion, how often was that in 2003?

25

HAL ABRAHAMSON

Q     '06?

A     I can't recall.

Q     '07?

A     I can't recall.

Q     From 2008 to 2010 did you terminate any employees?

A     I can't recall.

Q     From 2011 to 2014 did you terminate any employees?

A     I can't recall.

Q     From 2015 to 2017 did you terminate any employees?

A     Yes.

Q     Who?

A     One of the doctors.

Q     What was the doctor's name?

A     I will have to get that to you, I don't recall off the top of my head.

Q     And did you terminate them by the same process you terminated Debra Manheim?

A     Yes.

Q     Do you remember or do you recall if your father ever terminated or when did Mr. Pflanzer stop working for Advanced Homecare?

        MR. OLIVIERI:   Note my objection.

        You have a compound, multiple compound questions there.

HAL ABRAHAMSON

Is that what he said?

That's what he wrote.

That's what he wrote, correct?

    MR. OLIVIERI:   Yes, that's what he wrote.

    MR. DACHTERA:  I'm not asking you, I'm asking
him.

Yes, that's what he wrote.

Was his wife a patient?

I don't know.

You don't know.

So, how long have you known Mr. Palyo or known of him?

I don't recall that.

You don't recall that.

So, is it your testimony that Mr. Palyo is mistaken,
he never made pads for his wife?

Is it my testimony what?  Repeat the question.

Is it your testimony that Mr. Pflanzer never made pads
for Palyo's wife?

I don't know.

You don't know.

So he might have?

I guess, yeah.

What do you mean, he might have, right?

Yes.

ALL STAR REPORTERS

HAL ABRAHAMSON

Okay. So if he made pads, if he might have made pads

his wife wouldn't that constitute working for the office?

No.

It would not?

No.

Why not?

He could have been doing it as a favor.  He was never

employee.

So it's a favor. So making pads for patients is a

favor?

In this particular case, yes.

What other particular cases are favors?  Actually

working in the office were favors, delivering charts between

offices?

Sometimes. For my mother.

Okay. Were favors, were favors, consist --

MR. OLIVIERI:   You totally broke up.

You have to start that whole line of questioning

all over.

My last question was, would your conception of, quote,

would include ordering supplies for the office on occasion?

I was not aware that he ever ordered supplies.

Besides making food pads as a favor and delivering

charts as a favor, what other favors did Mr. Pflanzer do for

HAL ABRAHAMSON

Now that I have told you that that is what federal law requires of all employers, were you not aware of this for the past 20 years?

A    No.

Q    Were you not aware of it?

A    No.

Q    So, at this time you're not sure where the employee records are, right?

A    Correct.

Q    Let's move on.

In your interrogatories the question was asked, identify all staff, podiatrists and or any individual who worked for the Flushing office from 2012 to 2018.

Your answer, Ivan podiatrist, you podiatrist, Jean podiatric medical assistant, and a fourth person.

I asked you earlier who worked at the Flushing office from 2012 to '18 and you said there were three people; Ivan, you and Jean. Was there any other person?

MR. OLIVIERI:   Well, if you have that in front of you why don't you identify that person?

MR. DACHTERA:   I'm asking if he wants to change his answer.

MR. OLIVIERI:   We don't know, he doesn't recall.

Q    Do you recall that these three people worked there?

ALL STAR REPORTERS

HAL ABRAHAMSON

coming over now.

Q    Number 3. Can you see it Dr. Abrahamson?

A    Yes.

Q    Okay. You see you have Ivan, Hal, Jean, and then you've got W-2 employee.

A    Yes.

Q    So that W-2 employee is who?

A    My mother.

Q    It's your mother.

A    Mr. Pflanzer, or Mr. Dachtera, that question was for who worked there. You had the two doctors and then you asked what the duties were. The doctor as a podiatrist is self-explanatory and the W-2 employee was referring to Jean Abrahamson. I mean, it wasn't a fourth person at all.

        MR. DACHTERA:  It's not clear.

        MR. OLIVIERI:   It may not be clear, but that's
    what it was.

        MR. DACHTERA:  Okay, that's fine.

    We'll move on.

    I just want to clarify.

Q    Staying on this document, go to number 1.

        MR. OLIVIERI:  Which exhibit is this, by the
    way?  Is this the second set of interrogatories?

        MR. DACHTERA:   Yes.

ALL STAR REPORTERS

HAL ABRAHAMSON

Q    Okay. Okay. Okay.

-    Now, you said that your father never really spoke to you about Mr. Pflanzer being put on the payroll. Did he ever talk to you about Mr. Pflanzer being taken off the payroll?

A    No.

Q    So, you don't know if Mr. Pflanzer was ever taken off the payroll?

A    I don't know if Mr. Pflanzer -- Mr. Pflanzer was not an employee, so I can't answer that.

Q    But he was on the payroll for Advanced Footcare?

A    For those whatever years you showed.

Q    Right. So being on the payroll doesn't make you an employee?

A    I told you earlier, my father probably did that for him as a favor, but to answer specifically, no.

Q    And what records do you have that show or suggest that he wasn't an employee?

A    The fact that there were no record of him anywhere.

Q    Okay. Well, what do you have to suggest that while he was on the payroll he wasn't an employee?  Was there any notes?

A    Can you repeat the question.

Q    Was there any documents that you can refer to that would tend to prove your statement that even though he was on the payroll he wasn't really an employee?

ALL STAR REPORTERS

HAL ABRAHAMSON

122

Q    So that was just ignored somehow?

A    You know, I really can't remember back then.

Q    So you can remember that you discussed all the employees and what they made, but somehow Mr. Pflanzer just got lost in the shuffle? If that's your answer that's your answer, but I'm just making sure I'm hearing you right.

A    Okay.

Q    That's a yes?

A    Yes.

Q    Okay. So you don't know if Mr. Pflanzer or when he was ever taken off the payroll, do you?

A    No, I do not know.

Q    So it's possible Mr. Pflanzer was on the payroll in 2012?

A    In what year?

Q    2012.

A    Well, no, he was never an employee.

Q    I'm not asking that. I'm asking do you know for certain that he was not on your father's, your father's payroll in 2012?

A    Can you please explain the difference between my payroll and my father's payroll?

Q    I'm trying to figure that out the last two hours, but I can't explain it, but I'll ask it this way.

ALL STAR REPORTERS

1                          HAL ABRAHAMSON

2                     C E R T I F I C A T E

3
     State of New York        )
4    County of Westchester    )

5

6

7              I, PAMELA ROSS, a Stenotype Reporter

8    and Notary Public within and for the State of New York,

9    do hereby certify:

10

11             That the witness whose deposition is

12   herein before set forth, was duly sworn by me, and that such

13   examination is a true record of the testimony given by such

14   witness to the best of my ability.

15

16             I further certify that I am not related to

17   any of the parties to this action by blood or marriage, and

18   that I am in no way interested in the outcome of this matter.

19

20             IN WITNESS HEREOF, I have hereunto set my

21   hand this 18th day of October, 2021.

22

23                    *Pamela Ross*

24                         Pamela Ross

25

JEAN ABRAHAMSON

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------X
DANIEL J. PFLANZER

               Plaintiff,

     -against-   Docket No.:
               18-CV-02676-WFK-LB

JOHN DOE PC d/b/a ADVANCED FOOTCARE
ASSOCIATES, HAL F. ABRAHAMSON, DEBRA B.
MANHEIN AND HAL F. ABRAHAMSON AS THE
EXECUTOR OF THE ESTATE OF IVAN ABRAHAMSON,

               Defendants.
-------------------------------------X

               December 16, 2021
               4:21 p.m.

   EXAMINATION BEFORE TRIAL of JEAN

ABRAHAMSON, a non-party witness herein,

taken by the Plaintiff, pursuant to

Article 31 of the Civil Practice Law and

Rules of Testimony, and Notice, held via

Zoom videoconferencing, before Irene

Mamais, a Notary Public of the State of

New York.

JEAN ABRAHAMSON

2

1

2    A P P E A R A N C E S:

3       CLAUDIO & ASSOCIATES
              Attorneys for Plaintiff
4             89-36 Sutphin Boulevard,
              Suite 301-305
5             Queens, New York 11435

6       BY:  STEPHEN C. DACHTERA, ESQ.

7

8       THE LAW OFFICE OF DANIEL R. OLIVIERI
              Attorneys for Defendants
9             487 Jericho Turnpike
              Syosset, New York 11781

10

11      BY:  DANIEL R. OLIVIERI, ESQ.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

JEAN ABRAHAMSON

3

1

2               S T I P U L A T I O N S

3           IT IS HEREBY STIPULATED AND

4       AGREED by and between the attorneys for

5       the respective parties hereto that the

6       sealing, filing, and certification of the

7       within deposition be waived; that such

8       deposition may be signed and sworn to

9       before any officer authorized to

10      administer an oath, with the same force

11      and effect as if signed and sworn to

12      before the officer before whom said

13      deposition is taken.

14

15          IT IS FURTHER STIPULATED AND

16      AGREED that all objections, except as to

17      form, are reserved to the time of trial.

18

19

20

21

22

23

24

25

ALL STAR REPORTERS

JEAN ABRAHAMSON

4

1

2              THE COURT REPORTER:  The

3      attorneys participating in this

4      deposition acknowledge that I am not

5      physically present in the deposition

6      room, and that I will be reporting

7      from this deposition remotely.

8              They further acknowledge that,

9      in lieu of an oath administered in

10     person, the witness will verbally

11     declare her testimony in this matter

12     is under penalty of perjury.  The

13     parties and their counsel consent to

14     this arrangement and waive any

15     objections to this manner of

16     reporting.

17              Please indicate your agreement

18     by stating your name and agreement on

19     the record.

20          MR. DACHTERA:  I agree.

21          MR. OLIVIERI:  I agree.

22

23

24

25

ALL STAR REPORTERS

JEAN ABRAHAMSON

10

```
 1              J. ABRAHAMSON

 2    worked in Flushing and part-time in Rego

 3    Park.

 4        Q.    So you're saying she wasn't

 5    there at the times that you were there in

 6    Flushing?

 7        A.    Correct.

 8        Q.    You don't remember what hours

 9    she worked?

10        A.    Excuse me?

11        Q.    Do you remember what hours she

12    might have worked?

13        A.    If we were not there on a

14    Tuesday, she was there on a Tuesday.  If

15    we weren't there on a Friday, she was

16    probably there on a Friday.  We were never

17    in the office at the same time.

18        Q.    What were the hours of the

19    office in 2012, do you remember?

20        A.    The hours in the office in 2012

21    -- our hours?

22        Q.    In Flushing.

23            MR. OLIVIERI:  He asked the

24    question.  Read that question back,

25    please.
```

ALL STAR REPORTERS

1           J. ABRAHAMSON

2           (Whereupon, the last question

3     was read back.)

4     A.    The hours per say?

5     Q.    Yes.

6     A.    Arriving at 9:00 a.m., leaving

7     at 12:30 on Mondays, coming back at 7:30.

8     On Tuesday we were not there.  On

9     Wednesday the same story, 9:00 a.m., left

10    at 12:30, did not come back at night.

11    Thursday we were there -- we first started

12    in the afternoon at about two o'clock and

13    except for stopping to eat something, we

14    went right through till about eight or

15    nine o'clock.  We did not have hours on

16    Friday and Saturday, he saw very few

17    patients starting like at two in the

18    afternoon.  Maybe from two to four, that

19    was it.

20    Q.    From 2012 to 2018, you're saying

21    that it was just you and Hal?

22    A.    No, Hal was not there.  Me and

23    Ivan.

24    Q.    Hal worked in Rego Park

25    primarily?

JEAN ABRAHAMSON

20

```
 1              J. ABRAHAMSON
 2    anything for the practice"?
 3         A.    He couldn't treat patients.
 4         Q.    Well, he's not a doctor.  Aside
 5    from the doctor's responsibilities, he did
 6    help you with the snow you said, he did
 7    help you with the changing of the light
 8    bulbs.
 9              Is there anything else that he
10    might have done for the practice?
11         A.    No.
12              MR. DACHTERA:  Scroll down,
13         please.
14              (Scrolling.)
15         Q.    All of these things that are
16    listed here, are things that might be done
17    at the Flushing office, right?
18         A.    That is correct.
19         Q.    Who did all these things?
20         A.    I did them most of the time but
21    sometimes Daniel did those.  He did not
22    answer the phones, but he did pull charts
23    and he checked the daily sheets of the
24    patients, so he knew which charts.
25         Q.    Out of this list that you're
```

ALL STAR REPORTERS

JEAN ABRAHAMSON

21

1           J. ABRAHAMSON

2    seeing, tell me which ones, by letter,

3    which ones he might have helped you with?

4        A.      With B, C, D.  No E, no F, he

5    was at the door welcoming patients but

6    that was not his -- all of these are like

7    -- no, he did not apply Bio Freeze, he did

8    not administer whirlpool which we haven't

9    done for 40 years because they're not

10   something we would use.

11           At the end of the day, yes, at

12   the end of the day he might clean the

13   rooms and yes, he did sometimes file and

14   he did sometimes vacuum.  I don't know

15   about cleaning and mopping floors, I was

16   not there.  Sterilize additional

17   instruments, maybe, but I don't recall.

18   Change vacuum bags, yes, that was for his

19   uncle's health.

20       Q.      Did you teach him to sterilize

21   or did Ivan?

22       A.      Ivan.

23       Q.      Do you remember what year he did

24   that?

25       A.      No.

ALL STAR REPORTERS

JEAN ABRAHAMSON

22

1              J. ABRAHAMSON

2       Q.    So from what you can recall, did

3    Ivan or you pay Danny to do any of the

4    things that you mentioned he did from this

5    list?

6       A.    No.

7       Q.    Did you know if Danny ever got a

8    paystub from Ivan or a W-2?

9       A.    No, not that I know.

10      Q.    Were you aware that Daniel has a

11   W-2 from Advanced Footcare that's on

12   record to the Department of Labor?

13      A.    No.

14      Q.    Would you be surprised if I

15   showed you that tax statement?

16           MR. OLIVIERI:  Note my objection

17       to the form.  If you want her to

18       testify to it then you should show it

19       to her.

20      Q.    So you're not aware of it?

21      A.    No.

22           MR. DACHTERA:  Can you scroll

23       down?

24           (Scrolling.)

25      Q.    I want to draw your attention to

ALL STAR REPORTERS

1              J. ABRAHAMSON

2    he had another insurance and told him that

3    was not legal and so we took him off.

4         Q.    When was that?

5         A.    Sorry, sir, I could not tell

6    you.

7         Q.    But you have no knowledge of

8    whether Danny was ever put on a payroll?

9         A.    No.

10        Q.    So how could you know for sure

11   that he was never an employee?

12        A.    I can't answer that.  I don't

13   know.

14        Q.    But you said in your Affidavit,

15   absolutely, he was never an employee.

16        A.    He was an employee for a couple

17   of months on paper only for his benefit.

18        Q.    So it was on paper?

19        A.    But for his benefit and his

20   kindness.  Ivan never said that we would

21   hire him.

22        Q.    So when was he on paper, when?

23        A.    A long time ago.

24        Q.    How long?

25        A.    Sir, you're asking me questions

33

1           J. ABRAHAMSON

2     I cannot answer, I'm sorry.  If Ivan were

3     here, you could depose him.  He's not

4     here.

5           Q.     I understand.

6                  So now you're saying he was on

7     paper for a couple of weeks?

8           A.     Yes.

9           Q.     Is there any other time you'd

10    like to share with us that he might have

11    been put on the books that you could

12    remember?

13          A.     No, absolutely do not know

14    anything about that.

15          Q.     When you say "on paper," what do

16    you mean by that?

17          A.     I don't know what you mean by

18    the question.

19          Q.     Would you mean that he was put

20    on the employee payroll, he was given an

21    employee ID?

22          A.     No ID.  He was put on for his

23    benefit because he didn't have proper

24    insurance and that's the only thing it was

25    for.

JEAN ABRAHAMSON

35

                    J. ABRAHAMSON

      Q.   One last question.

           When was the last time Danny did
anything for the practice; whether it was
sterilizing an instrument, open a door for
somebody, when was the last year that you
can recall he did anything, shovel, change
a light bulb?

           MR. OLIVIERI:  Note my objection
      to the form.

           You can answer.

      A.   I have no idea.

      Q.   Could you give me a rough
estimate?

      A.   Well, my husband died on January
the 7th and that was the end of the
practice, so I can't tell you.


           (Continued on next page to
            accommodate the jurat.)

ALL STAR REPORTERS

DANIEL PFLANZER

ORIGINAL

1

DANIEL PFLANZER                    1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
CIVIL DIVISION - CENTRAL ISLIP
-------------------------------------------x

DANIEL J. PFLANZER,

                              Civil Action, File No.
                                   2:18-cv-2676

                    Plaintiff,

          -against-


JOHN DOE PC d/b/a ADVANCED FOOTCARE ASSOCIATES,
HAL F. ABRAHAMSON, DEBRA B. MANHEIM, and
HAL F. ABRAHAMSON AS THE EXECUTOR OF THE ESTATE
OF IVAN ABRAHAMSON,

                    Defendants.
-------------------------------------------x
                    Via Zoom
                    New York


                    October 5, 2021




          EXAMINATION BEFORE TRIAL of

DANIEL PFLANZER, Plaintiff, held at the

above-mentioned time and place, before

Pamela Ross, a Stenographer and Notary

Public within and for the State of New York.

DANIEL PFLANZER

2

1                    DANIEL PFLANZER

2              A P P E A R A N C E S:

3

4

5        STEPHEN C. DACHTERA, ESQ.

6        10105 Lefferts Blvd., Suite 207

7        S. Richmond Hills, New York  11419

8        Attorney for Plaintiff

9

10

11       LAW OFFICE OF DANIEL R. OLIVIERI, PC

12       100 Jericho Quadrangle Suite 233

13       Jericho, New York  11753

14       Attorney for Defendants

15

16

17

18

19

20

21

22

23

24

25

DANIEL PFLANZER

3

1            DANIEL PFLANZER

2          221. UNIFORM RULES FOR THE

3            CONDUCT OF DEPOSITIONS.

4        221.1: Objections at Depositions (a)

5        Objections in general. No objections shall be

6    made at a deposition except those which, pursuant to

7    subdivision

8        (b), (c) or (d) of Rule 3115 of the Civil

9    Practice Law and Rules, would be waived if not

10   interposed, and except in compliance with subdivision

11   (e) of such rule. All objections made at a deposition

12   shall be noted by the officer before whom the

13   deposition is taken, and the answer shall be given and

14   the deposition shall proceed subject to the objections

15   and to the right of a person to apply for appropriate

16   relief pursuant to Article 31 of the CPLR.

17        (b) Speaking objections restricted.

18        Every objection raised during a deposition shall

19   be stated succinctly and framed so as not to suggest

20   an answer to the deponent and, at the request of the

21   questioning attorney, shall include a clear statement

22   as to any defect in form or other basis of error or

23   irregularity.  Except to the extent permitted by CPLR

24   Rule 3115 or by this rule, during the course of the

25   examination, persons in attendance shall not make

DANIEL PFLANZER

4

DANIEL PFLANZER

2   statements or comments that interfere with the

3   questioning.

4       221.2 Refusal to answer when objection is made. A

5   Deponent shall answer all questions at a deposition,

6   except (i)to reserve a privilege or right of

7   confidentiality, (ii) to enforce a limitation set

8   forth in an order of the court, or (iii) when the

9   question is plainly improper and would, if answered,

10  cause significant prejudice to any person.  An

11  attorney shall not direct a deponent not to answer

12  except as provided in CPLR Rule 3115 or this

13  subdivision.  Any refusal to answer or direction not

14  to answer shall be accompanied by a succinct and clear

15  statement of the basis therefor.  If the deponent does

16  not answer a question, the examining party shall have

17  the right to complete the remainder of the deposition.

18      221.3  Communication with the deponent.

19          An Attorney shall not interrupt the deposition

20  for the purpose of communicating with the deponent

21  unless all parties consent or the communication is

22  made for the purpose of determining whether the

23  question should not be answered on the grounds set

24  forth in section 221.2 of these rules and in such

25  event, the reason for the communication shall be

DANIEL PFLANZER

5

1                    DANIEL PFLANZER

2       stated for the record succinctly and clearly.

3                  IT IS FURTHER STIPULATED AND AGREED that the

4       transcript may be signed before a Notary Public with

5       the same force and effect as if signed before a clerk

6       or a Judge of the court.

7                  IT IS FURTHER STIPULATED AND AGREED that the

8       examination before trial may be utilized for all

9       purposes as provided by the CPLR.

10                 IT IS FURTHER STIPULATED AND AGREED by and

11      between the attorneys for the respective parties

12      hereto that a copy of this examination shall be

13      furnished, without charge, to the attorneys

14      representing the witness testifying herein.

15

16                         ********

17

18

19

20

21

22

23

24

25

DANIEL PFLANZER

6

1                  DANIEL PFLANZER

2            THE COURT REPORTER:  The attorneys

3    participating in the deposition acknowledge that I am

4    not physically present in the deposition room and that

5    I will be reporting this deposition remotely.

6            You further acknowledge that, in lieu of an

7    oath administered in person, the witness will verbally

8    declare his testimony in this matter is under penalty

9    of perjury.

10           The parties and their counsel consent to

11   this arrangement and waive any objections to this

12   manner of reporting.

13           Please indicate your agreement by stating

14   your name and your agreement on the record.

15       MR. DACHTERA:  Stephen Dachtera, I agree,

16   attorney for plaintiff.

17       MR. OLIVIERI:   Daniel Olivieri, attorney for the

18   defendants, and I agree.

19       This deposition was ordered by Magistrate Judge

20       Bloom to occur today, she gave us an order.

21   D A N I E L   P F L A N Z E R,

22     having been first duly sworn, was examined and testified as

23     follows:

24           THE COURT REPORTER: Please state and spell you

25       name for the record.

DANIEL PFLANZER

7

DANIEL PFLANZER

1
2          THE WITNESS:  Daniel Pflanzer, D A N I E L
3     P F L A N Z as in zebra E R.
4          THE COURT REPORTER: Please state your address for
5     the record.
6          THE WITNESS:  76-79 172 Street, Flushing, New
7     York 11366.
8  DIRECT EXAMINATION
9  BY MR. OLIVIERI:
10     Q     Good morning.  My name is Dan Olivieri -- Mr.
11  Pflanzer, good morning.
12     A     Good morning.
13     Q     My name is Daniel Olivieri.  I'll be asking a series
14  of questions today.
15          If you don't understand my question please inform me,
16  but you must answer the question once one is posed to you.
17          If you need a break just say so, but if there's a
18  question that has to be answered you can't have a break until
19  you answer the question, okay?
20     A     Yes, sir.
21     Q     Please also you must respond verbally, you cannot
22  respond by nodding your head up or down.
23     A     Yes.
24     Q     With respect, Mr. Pflanzer, as you're sitting here
25  today, because I can't see your hands or your feet or anything,

DANIEL PFLANZER

60

```
 1                    DANIEL PFLANZER

 2    practiced in Flushing office, never in his life.

 3         Q    Okay. With regard to preparing these rooms at the

 4    beginning of the day for the practice, you mentioned that you

 5    had to get the utensils ready for the doctor. They're

 6    instruments, right?

 7              Now, what instruments did you prepare?

 8         A    Nail clippers, hemostat, there's three nail clippers,

 9    big, medium, small, there's clips in order if the patient --

10    they have to tie a gauze bandage around the foot, and then

11    there's an instrument that goes between the cuticles of the

12    feet, about five pieces in a tool kit.

13         Q    Okay.

14         A    Maybe six.

15         Q    Okay. Do you know what a standard instrument pack is?

16         A    Do I know what it is?

17         Q    Yes.

18         A    Yes.  I just explained it to you.

19         Q    Which instruments are in this standard instrument

20    pack?

21         A    Small, medium, large clipper, a clip like I explained,

22    and another instrument that goes in between the cuticles.

23    About five or six instruments in a regular nail clip pack.

24         Q    Do you know what the difference is between a nail

25    nipper and a nail clipper?
```

ALL STAR REPORTERS

DANIEL PFLANZER

97

DANIEL PFLANZER

Q    Who's Olga Adamopous?

A    I don't know about now, she used to work for Advanced
Footcare, she booked all the surgeries for Hal.

Q    She did the bookings?

A    No, I explained she booked all of Hal's surgeries.

Q    I understand.  What did she train you in?

A    Trained me -- well, it was Bob and Olga, how to
sterilize the instruments, how to wash the instruments, how to
load the instrument bags, how to change the chair bed, how
to -- what to do, what not to do, to alcohol the instruments
after every use, cleaned the room, vacuumed the room, cleaned
the bed pan that was in the chair.

Q    You also answered there was an orthotic specialist who
trained you; who was that person?

A    Bob, Bob did everything with the orthotics, whether he
had a license I don't know, but for orthotics Hal and Ivan told
Bob to do it and Bob in turn taught me.  When it was time for
him to leave I would take his place in a sense.

Q    Where did this training take place?

A    First in the Flushing office when we were setting up
the diabetic shoe program, he would train me a little bit over
there, then I would be his shadow, like a waitress at a
restaurant.

    I would watch what he would do, cut the inserts to fit

ALL STAR REPORTERS

DANIEL PFLANZER

169

1                          DANIEL PFLANZER

2

                           C E R T I F I C A T E
3
      State of New York        )
4     County of Westchester    )

5

6

7                  I, PAMELA ROSS, a Stenotype Reporter

8     and Notary Public within and for the State of New York,

9     do hereby certify:

10

11                 That the witness whose deposition is

12    herein before set forth, was duly sworn by me, and that such

13    examination is a true record of the testimony given by such

14    witness to the best of my ability.

15

16                 I further certify that I am not related to

17    any of the parties to this action by blood or marriage, and

18    that I am in no way interested in the outcome of this matter.

19

20                 IN WITNESS HEREOF, I have hereunto set my

21    hand this 11th day of October, 2021.

22

23                          *Pamela Ross*

24                             Pamela Ross

25

EXHIBIT   E

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK X          EDNY Docket /File No. 18-CV-02676-WFB-LB

--------------------------------------------------------------------X

DANIEL J. PFLANZER,

                         PLAINTIFF,

  -against-

JOHN DOE PC d/b/a  ADVANCED FOOT CARE ASSOCIATES,

HAL F. ABRAHAMSON, DEBRA B. MANHEIM AND HAL F. ABRAHAMSON

AS THE EXECUTOR OF THE ESTATE OF IVAN ABRAHAMSON

                         DEFENDANTS

--------------------------------------------------------------------X

        AFFIDAVIT IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT


STATE OF NEW YORK

COUNTY OF QUEENS:

Daniel Pflanzer, being duly sworn deposes and says:

1.  I am the plaintiff in the action and make  this affidavit in support of my motion for summary judgment.

2.  I was an employee of Aadvanced Foot Care Associates since 2002 when I was hired to work there. I was paid less than the minimum wage for the first few years then they stopped paying me.

3.  I worked initially at the Rego park office and then went back and forth from there to the Flushing Office.

4.  I was not paid minimum wage or any wage for that matter for the period of May , 2012 to when I left in October 2017. I was consistently told by the defendants that they would take of me and not to worry about getting paid. They also told me that I had a roof over my head and I should be helping them. I had to borrow money and get help from my family to be able to meet expenses.

5. I performed various tasks as I stated in my complaint, but most frequently I greeted patients, pulled and organized their charts, made foot pads, cleaned the office, applied Bio freeze cream developed x-rays and vacuum the office. I was not paid for any of this work.

6. I worked predominantly 16 hours a week for that time period.

7. I knew many of the patients of the practice by working there for so long and taking care of some of them. I recited many of these names in my deposition to further show that I did work for the defendants for the years of 2002 till 2017.

8. I do not remember some of the intricate procedures of some of the work I did, specifically the exact measurements of the footpads or the x-ray chemicals used to develop them. A lot of the work I did was by the repetitive nature of the work so that I did it a lot without thinking about what the exact procedures were. So I just do not remember some of those specific things.

9. I worked from 8:30 Am to 1PM Monday and Wednesday, I got there before the doctors came to get the office ready and then stayed after to clean up before they returned later in the day. I also worked 1:30 to 5:30 on Thursday and from 10 PM to 12 AM Monday and Thursday. The late hours were because the defendants worked sometimes very late on those days and I stayed after they left to clean up and prepare the office for the next business day.  Unfortunately towards the last few years Hal and Jean stayed even later and I saw them spending time on the medical billing system SAMI which I found out later Hal pleaded guilty to Medicaid fraud. Saturday was only for few hours if they saw patients. So the minimum I worked was 16 hours a week and some weeks I worked 19 hours. I estimate that from May 2012 to October 2017 I worked about 70 weeks of 19 hours per week but for the most part it was 16 hours a week. When I stated I was on call 24 hours it meant that they could call me to do a task if needed because I was close to the office and I was willing to be available, however that rarely happened from my recollection. I am seeking  compensation for the period of time that this Court allows for payment of wages for work that I performed for the defendants for all those years.

Dated April 22, 2022

Daniel Pflanzer

Sworn to before me
This 22d day of April 2022

Ronald Krome

Ronald Krome
State of New York Notary Public
NO. 01KR5015107
Certified in Nassau County
Commission Expires 07/12/2019